## Herman Livingston et al., Appellees, v. E. I. Gardner et al., Highway Commissioners, Appellants.

1. ROADS AND BRIDGES, § 45*—*when commissioners must maintain passageway.* Under a contract made between a farm owner and the commissioners of highways, settling the damage for building a highway across the farm, by paying a stated sum and in addition thereto agreeing to erect a substantial, well built, firm and durable cattle or stock passageway for the convenience and use of the premises in question, the commissioners were bound to keep and maintain such passageway, of the character and dimensions specified in the contract, as long as the right of way secured under the contract was used by the public as a highway.

2. ROADS AND BRIDGES, § 45*—*when construction of contract by parties may be considered.* While it is true that contemporaneous construction of the terms of a contract by the parties to it is not always conclusive where public interests are concerned, it is always permissible and often greatly helpful to note what the parties understood it to mean, and therefore the action of county commissioners in keeping a stock passageway erected over a highway constructed over the farm in question in repair was considered in determining the question whether, under a contract settling the damages to the farm and agreeing to build such passageway, the commissioners were bound to maintain it as long as the highway was used by the public.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the April term, 1920. Affirmed. Opinion filed October 27, 1920.

FRANK GILLESPIE, for appellants; WILLIAM R. BACH, of counsel.

LIVINGSTON & WHITMORE, for appellees.

MR. JUSTICE GRAVES delivered the opinion of the court.

In 1889, James T. Walton then being the owner of 160 acres of land in Randolph township, McLean county, Illinois, entered into a contract with the then

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

commissioners of highways of that township by which
the damages to the land of the said Walton to be oc-
casioned by the laying out of a public highway across
the same were agreed upon. The part of that contract
that is involved in this litigation is as follows:

"Now, therefore, it is agreed by and between the
said James T. Walton and the said Highway Commis-
sioners that the damages to be paid Walton on ac-
count of said road . shall be One Thousand (1000)
Dollars, and in addition thereto the erection and con-
struction by the commissioners, without expense to
said Walton, of a cattle or stock passageway across
the said highway at the most suitable point upon the
same for the convenience and use of the premises of
said Walton; which passageway shall be *substantial,*
well built, *firm* and *durable* structure * * * ."

The $1,000 mentioned in the part of the contract
quoted was paid, the passageway was built and for
approximately 30 years has been maintained and kept
in repair by the commissioners of highways and at
one time it was practically rebuilt by them. The road
was so laid out that 7 or 8 acres of Walton's farm
was on one side of it and the remainder was on the
other side. The small portion of the Walton farm that
was so cut off from the main farm was more suited
for pasture than for tillage. The only stream of water
on the farm was on this tract. In December, 1916,
the passageway having become out of repair and in a
condition in which the commissioners regarded it as
unsafe, they notified appellees, who had become the
owners of the Walton farm, to erect a good and sub-
stantial cattle crossing in the place of the old one.
Appellees replied that it was appellants' duty to repair
the passageway and that they would hold them for any
damage that might result from a failure to do so.
After a time appellants tore out the passageway and
filled it up. While this was being done appellees filed
a bill praying for an injunction to restrain appellants
from filling the passageway and praying for a manda-

tory injunction requiring them to restore the same to a usable or serviceable condition. Before the injunction was obtained and served, the filling of the passageway was complete. When issues were joined on the bill the same was referred to the master in chancery who took and reported the evidence and his conclusions that appellees were entitled to the relief prayed for. Exceptions to the master's report were overruled by the court and a decree was entered that appellants had no right to destroy the passageway, finding that it was their duty under the contract under which it was originally constructed to maintain it as long as the highway shall be used as such and ordered them to reconstruct it without delay in the same dimensions as are provided for in the contract between the said Walton and the then commissioners of highways. The commissioners of highways have appealed to this court and contend that the rights of the parties in this litigation depend entirely upon the contract in question; that such contract is unambiguous and expresses the intent of the parties to require the commissioners of highways to pay to Walton $1,000 and to construct the original passageway, but not to keep the same in repair.

The contention that the contract in question is so unambiguous as to warrant no construction as to its meaning is a misapprehension. It is out of too opposite construction of it that this litigation arises.

In construing contracts the prime object is to ascertain what the parties to it intended it should mean when it was entered into. In order to do that, the language employed in it, the meaning of words used, independently and in relation to each other, the end to be attained by it, the rights of the contracting parties in regard to the subject of it, what the parties to it have voluntarily done in and about performing or attempting to perform their respective parts of it as well as the construction placed upon similiar con-

tracts by the courts, are all proper matters to be considered and given weight.

When the contract in question here was drawn and executed the parties were dealing with each other in relation to correlated rights fixed by the public laws of the State. On the one hand the commissioners of highways had the right to acquire a right of way across the lands of Walton. On the other hand Walton was by law entitled not only to be compensated for his land taken and for any damage to his land not taken, but he was entitled to have a passageway across the proposed right of way for the purpose of letting his cattle and other domestic animals cross the road, provided he would construct the same at his own expense, which right was a perpetual right so long as the right of way was used by the public as a road. It was under those circumstances, when the commissioners were trying to secure the right of way over Walton's land, and Walton was trying to get all out of the situation he could that this contract was made. No one denies that the parties had a right to make the contract, whether it amounts to a contract to construct the passageway only, or to a contract to construct and perpetually maintain it. Neither is it up to this court in this case to determine whether the consideration which the commissioners agreed to pay for the right of way was excessive or inadequate. The question before us in this case is what was the consideration that the commissioners agreed to pay.

The language employed in the contract to designate what was to be paid is "One Thousand (1,000) Dollars, and in addition thereto the *erection* and *construction* by the commissioners, without expense to said Walton, of a cattle or stock passageway * * * which * * * shall be *substantial,* well built, *firm and durable* * * * ." The italics are ours. Similar provisions in contracts as well as in legislative enact-

ments have been held to mean not only the original erection or construction of the thing referred to, but its permanent maintenance as well. Thus where two adjoining towns had agreed together to build and pursuant to such agreement had built a bridge over a stream dividing the two towns, it was held that both towns were bound to keep such bridge in repair and if it was destroyed were bound to rebuild it. *People v. Highway Com'rs*, 158 Ill. 197. Where by an act of the legislature of Indiana parties were authorized to construct a canal upon condition that they should build certain bridges, the courts of that State held they were bound to keep such bridges in repair. *Board of Com'rs of Franklin County v. White Water Val. Canal Co.*, 2 Ind. 162. Again where an act of the legislature of New York used the words "be constructed" and "to construct" with reference to sewers, the courts of that State held that the works constructed must also be maintained. *In re Fowler*, 53 N. Y. 60. Again, where an act of the legislature authorized the issuance of bonds for the construction of bridges, the court held that the authority to construct bridges embraced the repair and maintenance of the same. *Bell County v. Lightfoot*, 104 Tex. 346, 138 S. W. 381. Again, where an act authorized the raising of money to construct a town dock, the United States court held that the power to construct included the power to repair. *Town of Pelham v. Woolsey*, 16 Fed. 418. Again, the words "erection," "substantial," "firm" and "durable" each and all imply permanency.

While it is true that contemporaneous construction of the terms of a contract by the parties to it is not always conclusive where public interests are affected by it, *Chesapeake & O. R. Co. v. Peed*, 155 Ky. 696, it is always permissible and often greatly helpful to note what the parties who worded the contract understood it to mean, as exemplified by what they did in and about the performance of their obligations under

it. In the case at bar the proof conclusively shows that the commissioners who signed the contract in question and who constructed the original passageway in pursuance of its provision, as well as their successors in office for nearly 30 years, kept it in repair and at least once practically rebuilt it.

While the contract could easily have been couched in language more accurately expressing what was intended to be the rights and obligations of the respective parties to it, we have no doubt the construction given it by the circuit court was the correct one, and that under it appellants are bound to keep and maintain the passageway in question, of the character and dimensions specified in the contract so long as the right of way secured under the contract is used by the public as a highway. The decree of the circuit court is affirmed.

*Decree affirmed.*