## Louisville & Jefferson County Metropolitan Sewer Dist. et al. v. St. Matthews Sanitary Ass'n.

February 6, 1948.

J. Verser Conner and Gilbert Burnett for appellants.

Lawrence S. Grauman for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

The St. Matthews Sanitary Association is a non-profit, private corporation, organized by some of the citizens of St. Matthews, a large, unincorporated community adjacent to the eastern limits of Louisville. See Engle v. Miller, 303 Ky. 731, 199 S. W. 2d 123. The Association built and owns a sewerage and drainage system serving the small business portion of St. Matthews. It is an "island" in the midst of a larger official sanitation district. See Somsen v. Sanitation Dist. No. 1 of Jefferson County, 303 Ky. 284, 197 S. W. 2d 410.

In contemplation of the construction of sewers, the Association entered into a contract on October 17, 1935, with the City of Louisville whereby the city agreed to allow the Association to connect its proposed "trunk sewer" with the sewerage and drainage system of the city. The resolution of the Board of Aldermen recites that the sanitary conditions in the community had been condemned as a menace to the health of the citizens of the city, as well as to the area, and that the connection would not damage or interfere with the operation of the city system or overtax the facilities. The agreement provides that the plans should be approved by the Director of Works of Louisville. It further provides that the Association would collect from all property owners, "making sanitary sewer connections," with the city's trunk line and pay over to the city in advance of the connection (to be made at the expense of the Association) "a sum equal to 4% of the assessed value of the real estate, including all improvements thereon, of the applicant to which the proposed connection is to be made according to the Jefferson County Tax Commissioner's records at the time the connection is made." It provides that the Association: "Shall promptly in-

form the Department of Works of the name and address of all property owners to whom it has granted a permit to connect with its said sewer and shall collect from the property owner the above mentioned connection charge before issuing a permit to make the connection, and shall remit monthly to first party for all connection charges collected by it, and in making said collections shall be considered as the agent of the property owners.''

The property holders were permitted to pay the ''connection charge'' in installments, the deferred payment to bear interest. The ''connecting property owner'' agreed to abide by the existing and all future rules, regulations and ordinances of the city with respect to the use of its facilities and that his failure to do so would result in severance of his property. It was further stipulated that ''this contract must be made a part of every permit issued by'' the Association.

On the faith of the contract the Association built its sewers, connections were duly made and the 109 units of property in the district paid an aggregate of $35,027.02 to the city.

The Louisville and Jefferson County Metropolitan Sewer District recently notified the Association that all persons using the facilities of the district would be required to pay the charges which it had established, anything in the existing contract to the contrary notwithstanding. Thereupon this suit was instituted by the Association for a declaration of rights. It claims the contract is valid and binding and that it releases the property being served thereunder by virtue of it from the payment of any service charges for the use of the city system. The district and the city controverted the claim and set up the imperative need that this system and other sewerage of the area be discharged into the city's system. They averred that the connection with the city's trunk line had been indispensable because of the prohibitive cost of constructing an outlet to the river below the city and the impracticability and large expense of erecting a sewer disposal plant. They stated their ability and readiness to take over the facilities of the Association. Several legal grounds for the claims of the respective parties were pleaded.

The court construed the contract as entitling the property of the Association, its owners and patrons to the perpetual use of the sewers of the City of Louisville, and to exempt them from the payment of any service charges to the Metropolitan District. It held that the contract was not terminated by the statute and could not be abrogated by the District.

This court is constrained to differ with the learned chancellor in the construction of the contract. It seems to us that the contract gave the Association and the property owners whom it represented the right of connecting up with the sewers of the city to the same extent and degree that citizens of Louisville had at the time, and that so long as they use the sewers now under the control and dominion of the Metropolitan District, they must conform to its lawful orders and rules and pay for the use of the sewers the same as others similarly situated or classified.

In this contract the accent is upon the connection and the payments are described as being for that right. It is utterly silent as to any charge for use. In the Strathmoor contracts the right to use was expressly stipulated and the payments were specified as being for that purpose. This contract looks to the connections by each separate piece of property, the Association being only the agent of the owner. There may be no implication or presumption that the sums paid were for a vested and unchangeable right to perpetual exemption from any charge in the future. The rule in construing contracts in which the government is a party is to resolve all ambiguities, presumptions and implications in its favor. "Where a public interest is affected an interpretation is preferred which favors the public." Am. Law Inst. Restatement, Contracts, Vol. 1, Sec. 236(f). See also 12 Am. Jur., Contracts, Sec. 254; Chesapeake & Ohio Ry. Co. v. Peed, 155 Ky. 696, 699, 160 S. W. 472, Ann. Cas. 1915C, 460. Obviously, connection without use would not make sense. So, of course, the right to use the city sewers was contemplated. But the right was the same as the inhabitants of the city of Louisville then had. The users of the sewers were given parity, and at that time city inhabitants were not being charged anything directly for the use of their own sewers. The cost of operation and maintenance was included in their

tax bills. The members of the Association were merely placed upon the same plane except that they paid no taxes, which might have covered the cost. The difference was in part, at least, made up by the advantages accruing to the city from having the nearby health menace abated. It is significant that the compensation paid by each one who connected up with the system was computed upon the same basis as that upon which Louisville citizens had paid for the construction of their sewers. It was the same as an ad valorem tax upon property, being payable once for all instead of having been paid year by year. The assessment was certainly fair and reasonable and the amount it yielded was not a disproportionate contribution toward the cost of the facilities into which the small system of the Association was being integrated. Furthermore, there is no proportionate relation with the use, based upon water bills, as has been determined by the Metropolitan District. Two illustrative cases are given. An individual who paid an assessment of $100 for the privilege of making the connection would have had to pay service charges of $305.16 in 1946 if the rates proposed by the district had been in effect. The Telephone Company serving the community paid an assessment of $2,400 but it would have had to pay only $11.89 under that rate schedule.

In Baker v. City of Princeton, 226 Ky. 409, 11 S. W. 2d 94, 95, the city had built a small sewer to serve its business section and a few residences, and required each property holder connecting with it to pay a fee of $20. That was the only charge made then or afterward. This sewer and the entire sanitary condition of the city were condemned as constituting a menace to public health. The city set about to enlarge and extend these facilities and to erect a disposal plant, to serve the entire community, all at the expense of property abutting or benefited. One who had paid the $20 fee originally for connecting or tapping the sewer claimed to have acquired a vested right which the city had no power to interfere with or take away. We held: "The mere right to tap a sewer system in consideration of a specified fee is simply a temporary privilege which must yield when it becomes necessary to discontinue the old system, and construct a new system in order to promote the public health."

It was not claimed by the plaintiff that there was a contract giving those who paid the connecting fee sewer privileges for all time to come. The court added, as dictum, that even if there had been such contract it would have constituted an attempt to barter away the city's police power and would not, therefore, have been binding. It was held that the property holders were properly chargeable with their proportionate cost of the new system even though the smaller unit was included in it.

Carson v. Sewer Commissioners of Brockton, 182 U. S. 398, 21 S. Ct. 860, 45 L. Ed. 1151, is a leading case. The property holder had paid for sewers with which his property was connected, and claimed he had a right to the free use of such sewer forever afterward; that the expense of its maintenance must be raised by general taxation. The court held that the property owner was not being deprived of his property without due process of law and that the matter was one of public policy and of contract; that if the owner used the sewer he could be compelled to pay for that use. The decision of the Supreme Judicial Court of Massachusetts to the same effect was affirmed.

The right of the appellant, the Metropolitan Sewer District, to require payment of sewer service fees of city property holders who had paid and were still paying for the cost of the sewers was predicated upon the same ground. Veail v. Louisville & Jefferson County Metropolitan Sewer District, 303 Ky. 248, 197 S. W. 2d 413.

We are of opinion, therefore, that it is within the power of the Metropolitan District to require the payment of service charges for the use of the city sewerage system according to its reasonable schedule and legal classification of those using the facilities of the St. Matthews Sanitary Association so long as they are connected with the city system.

The judgment is reversed.