## Veail et al. v. Louisville and Jefferson County Metropolitan Sewer Dist. et al.

November 8, 1946.

250

Hal O. Williams for appellants.

J. Verser Conner, Gilbert Burnett, Lawrence S. Poston and Sam Steinfeld for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

This action was instituted by appellant, Virginia Veail, a resident, taxpayer, and user of the sewer system of the City of Louisville, and Norbourne O. Rudy, a resident, taxpayer, and prospective user of a sewer system in the Louisville and Jefferson County Metropolitan Sewer District, suing for themselves and all others in their respective categories and situations. The petitioners seek a declaration of rights between them and those for whom they sue, and the defendants, members of the Board of Louisville and Jefferson County Metropolitan Sewer District, City of Louisville, its Mayor, its Director of Works, and the Judge of the Jefferson County Court, in respect to the constitutionality of the provisions of KRS 76.010 to 76.220, inclusive, which are presently compiled in the 1946 Legislative Supplement to the Kentucky Revised Statutes, and which are contained in Chapter 104 of the Acts of the 1946 General Assembly. Appellants specifically prayed that appellees be enjoined from complying with the provisions of the Act. The Chancellor denied the injunction and dismissed the petition.

The Act is an enabling one, and authorizes the operation of a metropolitan city and county sewer district, which shall be a body corporate, in each city of the first class and county containing such a city. Such a district may not be created unless the legislative body of the city adopts an ordinance declaring it to be for the best interests of such city and inhabitants thereof that

such a district be created. The Act provides that the district shall be governed by a board of five members, three of whom shall be appointed by the mayor of the city with the approval of its board of aldermen, and two of whom shall be appointed by the judge of the county with the approval of its fiscal court. The board is empowered to employ the personnel necessary to the efficient operation of the functions of the district. The present sewer facilities of the city are to be transferred to the district, and dedicated to its use. The board, with the approval of the board of aldermen of the city, is authorized to construct additions to the system; to acquire property by purchase, gift, or condemnation; to make contracts, borrow money, and issue bonds; and, subject to the approval of the board of aldermen of the city, to fix and collect sewer rates, rentals, or other charges, for services rendered by the facilities of the district. All rentals or other charges collected shall be devoted solely to the payment of the obligations of the district. The district is granted, by right of eminent domain or purchase, the power to invest itself with the fee-simple title to, or easement in, such real estate as may be deemed to be necessary to carry out its functions; but such property or right therein must be paid for solely from funds which shall have accumulated from the collection of service charges. The bonds authorized to be issued are to be liquidated solely out of such funds, and the bonds shall constitute neither an obligation or indebtedness of the city or of the county, nor a lien upon any of the property of the inhabitants of the district. Upon default in the payment of any bond, or interest thereon, 20 per centum of the bondholders may apply to the court for the appointment of a trustee to represent the interests of all the bondholders; such trustee is authorized to institute legal proceedings to enforce the rights of the bondholders in requiring the district's board to collect rentals sufficient to meet the obligations of the district; and the court is authorized to appoint a receiver to collect and receive all service charges and other revenues of the district. The initial unit of the district is conterminous with the present boundary of the city, but it may be extended into the county, ''whenever the district and the owner or owners of real property to be served and located outside the limits of such

city, by appropriate written instrument, agree as to apportionment of any and all costs of construction work, subsequent maintenance and operation appertaining thereto, * * *."

Appellants contend the Act is violative of the State and Federal Constitutions, in the various respects hereinafter related. Until the passage of the Act under consideration, no single statute comprised all of the features objected to by appellants; but each of them is contained in one or more of various acts of the General Assembly, and heretofore most have, if each has not, been attacked and held to be constitutional by this Court.

The first complaint is that the Act violates Section 242 of the Kentucky Constitution and the Fourteenth Amendment to the Constitution of the United States, in that it takes private property without compensation to the owners thereof. In this connection, it is argued that the citizens of Louisville built its present sewer system by authorizing their officials to raise the money therefor by the issuance of bonds. These bonds are obligations of the city and its taxpayers, and the unpaid balance, less sinking fund reserves, amounts to approximately $14,000,000. The city and its taxpayers will remain obligated to pay these bonds until the year 1969. The Act in question provides that this sewerage system shall be operated by the Metropolitan District, and permits the citizens who are still paying for the system to be charged for using it; thus, the right to the free use of their own sewerage system has been taken from the taxpayers of the city without compensation. We cannot agree with this contention. The transfer to the Metropolitan Sewer District is a mere transfer of custodianship; and, even though the taxpayers of the City of Louisville own the physical properties of the sewer system, they have the right to entrust this property to the management of another municipality when authorized to do so by the Legislature. If the City of Louisville itself should continue to operate the sewerage system, it would have the right to charge the users of the system for their use of it. It is shown by the record that the taxpayers of the city are not the only users of the sewerage system; and it is obvious that some citizens will make greater use of the system than others. It would be entirely

equitable to charge them in proportion to their use; thus, it would be legal for the city to establish a rate schedule for charges to all users of the system, though some of them may be the owners of the physical property by reason of the fact that they are taxpayers in the city. If the city may make such charge, undoubtedly its agent may do so, and that is all the Act provides for. Nor do we think the Act violates Section 10 of Article I of the Constitution of the United States, as argued, by impairing the obligations of contracts. It is said that the only reason the taxpayers of Louisville made a contract with the bondholders to pay to them the loan represented by the bond issue was that they thereafter would be entitled to the free use of the sewers; but we are unaware of any provision in the bonds or in any ordinances of the city guaranteeing to the taxpayers the right to use the sewers without charge. Undoubtedly, a great deal of money is spent annually in maintaining and operating the system; and it is entirely equitable and legal, as we have said, to charge the users of the system a reasonable rate to defray the expenses of operation, instead of directly assessing the taxpayers of the city through its general fund. The situation is similar to that presented in Klein v. City of Louisville, 224 Ky. 624, 6 S. W. 2d 1104. The Act under consideration in that case (KRS 181.060 to 181.500, inclusive) authorizes cities of the first class to construct and operate bridges across any navigable stream forming a State boundary. That Act is very similar to, if not substantially the same as, the Act under consideration here. It authorizes the appointment of a commission which shall become a body corporate; and grants it the power to select sites and build bridges, to issue and sell revenue bonds to defray the cost of construction, to operate and control the property, and to charge the users of the bridge for crossing thereover. This Court held the Act to be constitutional, although nearly every argument presented in this case was urged in support of the contention that the bridge Act was unconstitutional. The Act likewise is similar to the Acts empowering cities to own and control their own utilities, which have been upheld by this Court. Kirch et al. v. City of Louisville et al., 125 Ky. 391, 101 S. W. 373, 30 Ky. Law Rep. 1356. The Act under consideration in the Kirch case empowers cities of the first class to build

water works plants. Among other things, the Act recites: "The board of waterworks shall be vested with all the authority and privileges, exercise all the franchises, and have possession, control and management of all the property, of the corporation of which the city owns all the stock. It may make contracts and sue and be sued, but only in the name of the corporation." KRS 96.260. That Act further provides that the commission operating the water plant may charge the users of water for such use. The Act in question is not unlike that empowering cities of the first class to create housing commissions, KRS 80.010 to 80.257, inclusive, the validity of which was upheld by this Court in Spahn v. Stewart, 268 Ky. 97, 103 S. W. 2d 651. It is argued further that, if the District should assume the obligations of the city under existing construction contracts, which it has the right to do under the Act, the exercise of this right would impair the obligation of such contracts. Appellants have not shown that they hold any contract with the city for sewer construction; therefore, they cannot be heard to complain concerning this provision of the Act. The various provisions are severable, and the validity of one does not necessarily affect the validity of the other, and the validity of this provision does not affect the present rights of the parties.

It is argued further that the city has consented to the District receiving income from industries which have contracted to pay the city for the privilege of using its sewers; and, by thus consenting, it has impaired the obligation of a contract made for the benefit of the taxpayers of the City of Louisville. This argument is not sound, we think, because the monies collected must be used by the District for the purpose of furnishing the service contracted for. The city merely assigned the benefits of its contract with outside industries, in consideration of being relieved of its obligation in such contracts. We see no merit in the contention that the Act impairs any obligation in the contracts shown to exist.

It is next insisted that the Act violates Sections 157, 158, and 159 of the Kentucky Constitution. In support of this contention, it is argued that the relationship between the District and the city is such that obligations of the District become obligations of the city, and that the Act permits these obligations to be incurred without

limitation. But the Act specifically provides that an obligation of the District shall not constitute an obligation or indebtedness either of the city or of the county in which the system is located; and, since the District is a separate municipality and any debt which it may incur must be paid solely out of the revenues of the District, no obligation incurred will be a debt of the municipality within the meaning of Section 157, 158, or 159 of the Constitution. We have affirmed this holding in many cases. Spahn v. Stewart, supra; Klein v. City of Louisville, supra, and cases therein cited.

The next complaint is that the Act is special or local legislation, therefore inhibited by Sections 59 and 60 of the Constitution. Appellants base this contention upon the wording of KRS 76.080(3), wherein the City of Louisville and the County of Jefferson are specifically referred to instead of the broader term, "city of the first class and county in which the city of the first class is situate." It is clear that the use of the words, "City of Louisville and County of Jefferson," was an inadvertence; and such inadvertence is not of sufficient substantiality to render the Act invalid. A like contention was rejected in Miller v. City of Louisville, 99 S. W. 284, 285, 30 Ky. Law Rep. 664; therein we said: "* * * so long as Louisville is the only city of the first class, there is no way in which the General Assembly can provide for the government of Louisville but by acts for the government of cities of the first class. If there were now in the state a half dozen cities in the first class, the act in question would be applicable to all of them. The fact that there is only one city in that class does not change or affect in any way the power of the General Assembly. It is true the act uses in one section the word 'Louisville,' but this is simply an inadvertence due to the fact that Louisville is now the only city of the first class. It is also immaterial that the act only provides for an election in November, 1906, and that, as Louisville is now the only city of the first class, it is the only city that can take advantage of the act."

The next contention is that the Act delegates legislative powers in violation of Sections 27, 28, and 29 of the Kentucky Constitution. The same argument was made in virtually all of the cases above cited, and was rejected in each instance. The powers conferred upon

the District by the Act are purely administrative, and not legislative. See Spahn v. Stewart, supra; Klein v. City of Louisville, supra; and Estes v. State Highway Commission et al., 235 Ky. 86, 29 S. W. 2d 583. But it is insisted that the power granted to the court to appoint a receiver in case of default in the payment of bonds is the delegation of executive powers to the courts. This power was granted to cities in respect to their water plants, and was upheld in City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; but in addition to this authority, we think the courts have inherent power to appoint receivers in all cases of mismanagement. In any event, this provision of the Act does not affect the rights of the parties at present, and its validity may not be questioned until an attempt is made to exercise the power it grants. What has just been said likewise applies to the complaint concerning the provision which grants the board the right to dispose of real estate acquired by the exercise of the power of eminent domain, and to the contention that the Act violates Section 160 of the Constitution in that it authorizes the courts to appoint a trustee to operate the facility upon default in the payment of bonds.

Finally, it is insisted that the Act is contrary to public policy, in that it authorizes double taxation. We find it unnecessary to discuss the public policy of this State in respect to double taxation, since the Act provides for no tax whatever. Charges for sewer service are not taxes, any more than are bridge tolls or water rents. Klein v. City of Louisville, supra.

The judgment is affirmed.