## Louisville & Jefferson County Metropolitan Sewer Dist. et al. v. Joseph E. Seagram & Sons, Inc. et al.

### Same v. International Harvester Co.

February 6, 1948.

414

J. Verser Connor, Gilbert Burnett and John R. Moreman for appellants.

Ogden, Tarrant, Galphin & Street for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The Louisville and Jefferson County Metropolitan Sewer District was created under an enabling act. Acts of 1946, Ch. 104, now Chapter 76, Kentucky Revised Statutes. The act was held constitutional in Veail v. Louisville & Jefferson County Metropolitan Sewer Dis-

trict, 303 Ky. 248, 197 S. W. 2d 413. By virtue of the statute and the action of the Board of Aldermen of Louisville and the Fiscal Court of Jefferson County, there was transferred to the District the ''complete jurisdiction, control, possession and supervision'' of all the existing sewer and drainage system and facilities of Louisville, located within and without the city boundary. Among the broad powers of the district is that of establishing a schedule of ''rates, rentals and charges to be collected from all the real property served by the facilities,'' based upon ''the consumption of water, on premises connected with such facilities, taking into consideration commercial and industrial use of water.'' The district was authorized to adopt either of two other specified bases or a combination, or ''any other bases or classification'' it should ''determine to be fair and reasonable, whether similar or dissimilar to those enumerated.'' The statute declares, however, that the schedule should not become final within the city ''unless and until it has received the approval'' of the Board of Aldermen ''by ordinance approved by the mayor.'' It is further provided ''such schedule shall be uniform for all property falling within the same classification.'' Provision is made for changing the rates in the same manner. KRS 76.090.

In May, 1947, the District Board (composed of three members, appointed by the Mayor, and two by the County Judge) promulgated a schedule of rates based upon and graduated according to quantities of water used in the property served by the sewer system. No distinction was made between property within and property without the city limits. The schedule was submitted to the Board of Aldermen for approval of the city rates. The president and other representatives of the Board of Aldermen advised the District Board that the rates to be charged within the city would not be approved except and until the schedule be changed to charge property outside the city fifty per cent in excess of the charge fixed against city property for similar sewer services. After meetings of the District Board and a committee of Aldermen, and further negotiations, oral and written, the District Board acceded to the city authorities. Following a preamble reciting the negotiations

and the fact that the Board had been advised that the Aldermen would not approve the rate schedule established for the city unless that for outsiders were increased, the District Board, "Resolved that on condition that the Board of Aldermen approve the rate schedule heretofore submitted to it without further delay, the Sewer District agrees, in so far as it may legally do so, that all contracts hereafter entered into with persons or corporations for sewer services to property outside the City of Louisville, will provide for a sewer rental charge of 50% more than is charged for similar service to property inside the City of Louisville, said additional charge to prevail until such time as the property served may be annexed to the City of Louisville."

Modification was made of the proposed schedule and subsequently an ordinance was passed by the Board of Aldermen approving the rates for the city property as originally submitted.

The District Board having overruled their objections and protests, suits were filed against the district and the city by Joseph E. Seagram & Sons, and a subsidiary corporation, the International Harvester Company, the B. F. Goodrich Company, and Bond Brothers, Incorporated, which operate large industries located outside the city and use the city sewer system, to enjoin the district from charging or collecting the service charges against them respectively, as finally established on August 13, 1947.[1] They also sought to recover money alleged to have been illegally collected and to enjoin the city from interfering with any action of the district in the adoption and promulgation of sewer service fees outside the city limits. The appeals have been considered together, but a separate opinion is delivered in the Goodrich and Bond cases, since they involve an additional and different question.

The suit of the International Harvester Company was made a representative suit for all property holders

[1] Under the County Differential Rate Schedule it is estimated that the net charges for sewer service, after all discounts, for Harvester, Seagram and Goodrich, when operating at normal capacity, would be increased as follows: Harvester from $22,800 to $33,600 per year; Seagram from $41,000 to $65,000, and Goodrich from $21,000 to $32,800.

similarly located. The grounds upon which the schedule of charges finally adopted is attacked are: (1) The classification and greater service charges on property lying without the city limits are arbitrary and unreasonably discriminatory; and (2) the schedule is invalid because the sewer district in acceding to the demand of the Board of Aldermen abdicated its power to fix rates and delegated it to the Aldermen.

Justification for the classification and differential claimed by the district and the city is that they rest upon natural and reasonable bases, namely: (1) The location of the property furnishes a valid factual basis for classification, primarily because (a) the two classes of citizens reside in separate and distinct political subdivisions; (b) the statute vests complete jurisdiction and management in the district as an independent, unified municipal corporation; (c) the statute recognizes the existence of a distinction in the classes of property; (d) the City of Louisville over a long period of time and at great cost has developed the sewer system for the benefit of its own citizens, and is the owner of the legal title of all of it, both that which is within the city boundary and the outlet sewers and drains outside the city, which are being used by the plaintiffs; and (e) the city is obligated to liquidate outstanding bonds and pay annual interest thereon in large sums, the money being raised exclusively by taxation on city property and licenses. (2) The classification and schedule were in fact established and adopted by the District and the courts may not go behind the action to inquire into the motives or purposes of the Board.

The court ruled the classification to be improper and invalid and rendered a consistent judgment. Since this court has reached a different conclusion and believes that the classification of users of the sewer system is founded upon a reasonable basis, the alternative question must be decided.

First. The provision of the statute as to the schedule of rates applicable to property within the city being approved by ordinance does not provide for such a formal action in case of non-concurrence. It is true, as the appellees contend, that a municipal body must act in its corporate capacity and speaks only through and by its

records. But the statutes do not provide for any affirmative disapproval of proposed charges. Obviously, non-action withholds approval, and the absence of a record of approval constitutes a negative. The hard fact and crux of the matter is that the Board of Aldermen did not approve the schedule submitted to it. There was a pocket veto. The character of the representation of the Aldermen and the positive assertions of the president of the board and other members, it seems to us, was sufficient notice to the District Board of the failure to approve. A reasonable time elapsed and the District Board reconsidered its former action without having sought a judicial review of the non-action of the Board of Aldermen.

We need not concern ourselves with the point that the Aldermen may have acted arbitrarily. Cf. Hatcher v. Kentucky & West Virginia Power Company, 280 Ky. 583, 133 S. W. 2d 910. The District Board did recede from its position and promulgate a new schedule. The demand of the city was really that the service charges within the city should be two-thirds of the rate outside the city. Instead of reducing the city rates to bring them within the ratio demanded as a condition of approval, the Board raised the outside rates. Whether this was of its own free will or by force of pressure is not material. The former is to be presumed. It is firmly settled that the courts will not inquire into motives which impel or the expediency or wisdom of legislative or administrative action, for that does not affect its legality or validity. O'Bryan v. Highland Apartment Company, 128 Ky. 282, 108 S. W. 257, 33 Ky. Law Rep. 349, 15 L. R. A., N. S., 419, 11 Am. Jur., Constitutional Law, Sec. 141; 37 Am. Jur., Municipal Corporations, Sections 68, 182. Unless it is tainted by malice, fraud or corruption, the courts are concerned only with the product and not the motives which produced it. Town of LaGrange v. Overstreet, 141 Ky. 43, 132 S. W. 169, 31 L. R. A., N. S., 951; Kentucky Utilities Company v. City of Paris, 256 Ky. 226, 75 S. W. 2d 1082. Therefore, the action of the Sewer District Board stands as its own in establishing the classification and fixing the service rates.

Second. Everybody agrees upon our cherished principles of denying arbitrary power and recognizing

equality in public and governmental functions. Sections 2 and 3, Constitution of Kentucky. The grant of power carries with it the necessary implication that its exercise will be in accordance with these provisions of the Bill of Rights. And everybody also recognizes that a system of classification founded upon a natural and reasonable basis, with a logical relation to the purposes and objectives of the authority granted, does not offend the principle of equal rights under law. If it is of that character, the classification is good; otherwise it is bad and cannot stand. In some cases "the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation." Euclid v. Ambler City Co., 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016. Here, as in all cases, the divergence is in the views of the parties as to which category the classification belongs—good or bad.

In the approach to a consideration of the important question, it is to be borne in mind that the burden is upon one who assails an act of a municipal body as unreasonable and arbitrary to sustain his contention, clearly and convincingly, where it does not appear on the face of the ordinance or order. Furthermore the courts will exercise caution in declaring such an act invalid because it rests upon discretion vested in public officers, chosen directly or indirectly by the people. Wells v. Town of Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 31 Ky. Law Rep. 576, 11 L. R. A., N. S., 1080; Fowler v. Obier, 224 Ky. 742, 7 S. W. 2d 219; City of Louisville v. Koenig, 290 Ky. 562, 162 S. W. 2d 19, 140 A. L. R., 1369. As held in Veail v. Louisville & Jefferson County Metropolitan Sewer District, supra, the governing board is given statutory power to make charges for the service proportional to use in order to produce adequate revenue for the operation and maintenance of the system, irrespective of the fact that the citizens built the initial system and are still paying for it and have not heretofore directly paid any service fees to meet the expenses of maintaining it. Having been vested with such legislative or administrative discretion— the line of distinction in this connection being obscure in practical operation—if the validity of the Board's action be fairly debatable its judgment must be allowed

to prevail against the objection that the classification is discriminatory.

All of the authorities agree that special charges of this kind are not taxes but rents for the use of the sewers, or in some instances but a method of paying for their construction. Francis v. City of Bowling Green, 259 Ky. 525, 82 S. W. 2d 804; City of Lexington v. Jones, 289 Ky. 719, 160 S. W. 2d 19; Veail v. Louisville & Jefferson County Metropolitan Sewer District, supra, 303 Ky. 248, 197 S. W. 2d 413. Consequently, the classification of the users of property does not fall within the strictness of the constitutional provisions requiring uniformity of taxation. 17 Am. Jur., Drains and Sewers, Sec. 63; 51 Am. Jur., Taxation, Sec. 16; Pond, Public Utilities, Sec. 288. Discrimination in rates or services is not permitted by municipalities any more than private utilities. Pond, Public Utilities, Sec. 280. But "a distinction may be made between different customers or classes of customers on account of location, amount of consumption or such other material conditions which distinguish them from each other or from other classes." Pond, Public Utilities, Sec. 275, 288, 292. Of particular application to the instant case is City of Lexington v. Jones, supra, 289 Ky. 719, 160 S. W. 2d 19, 21, holding it to be a valid exercise of municipal power for the city to establish a schedule of service charges against suburban property owners for the use of the city's sewer system. We there said: "So long as they take advantage of the facilities of the city's property, the outsiders should pay reasonable charges." It appears no such charges were being made against city residents or property.

The character of the case at bar is not the same as those cases in which it is held that there may not be a different license tax based upon different modes of doing the same business or upon residence or non-residence in the city. See, for example of the first group, City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829; Commonwealth v. Payne Medicine Company, 138 Ky. 164, 127 S. W. 760; and for the second group, Simrall v. City of Covington, 90 Ky. 444, 14 S. W. 369, 12 Ky. Law Rep. 404, 9 L. R. A. 556, 29 Am. St. Rep. 398; Long v. City of Benton, 285 Ky. 526, 148 S. W. 2d 701. True, there is in the instant case not merely similar but

the identical service. If the basis for the differential in this case were merely geographical or residential, the legal consequences would be different. The real basis is the use and enjoyment of property by one class who own it and another class who do not.

The citizens of Louisville over a long period of years built the system at a cost of many millions. Sewer bonds of the gross amount of $16,675,000 are outstanding. The city paid $671,000 in accrued interest during 1947. This expense was incurred in part in building the outlying sewers being used by the parties to these suits and others similarly located. Capital investment and carrying a capital debt enter into the cost of the service, even as in fixing rates for any public utility. It is but to equalize the burden to require those who have paid no part of the cost of construction of a sewer to do so by paying for its use. Herrmann v. State of Ohio ex rel. Cooper, 54 Ohio St. 506, 43 N. E. 990, 32 L. R. A. 734; Fergus Falls v. Edison, 94 Minn. 121, 102 N. W. 218, 70 L. R. A. 238.

The condition here is as if two men were to enter into partnership with the agreement that the plant would be rehabilitated and kept in repair and the business wholly operated and managed by an agent. One contributes no part of the physical property. The other contributes a building and equipment of a going concern on which he has spent and still owes a substantial sum, secured by a mortgage, which he must personally pay with annual interest. We suppose there would be no controversy over the right of the owner to have his ownership and carrying charges recognized in the financial operations of the business venture, or as to his right of consideration in the fair division of the earnings. To allow him nothing on that account would not be reasonable. So it seems to us that a similar consideration of the users of the present sewer and drainage plant requires that there be a differential, for it is reasonable and has a logical and fair basis. Otherwise, there would be inequality. Those who have paid and continue to pay taxes to raise the sinking fund and interest would bear a greater burden of maintaining their own property, while those who live outside the city would enjoy all the privileges of the property and a "free ride" upon their facilities. This would be the

equivalent of a differential in favor of those who live outside the city.

The analogy or conclusion is underlined by the fact that before the establishment of the district and the new method of maintaining the system, the appellees' industries and others located outside the city limits paid under contract large sums to the city annually for the same use of the same facilities.

We are of opinion, therefore, that it was within the power of the District Board to make the classification between property within and property without the city boundaries.

Third. It would be idle to say, however, that there may be a classification between those who own and those who do not own the system, the operation and maintenance of which have been transferred to the district, and then permit arbitrary action in establishing a differential in the rates to be charged. It must have a fair relationship to the grounds of classification. There must be a leveling of inequalities. Whether a differential of fifty percent is arbitrary or is a reasonable ratio of balance, as determinable by an appraisement of the factors which enter into the equation, is not a question presented in these appeals.

Wherefore, the judgments are reversed for consistent proceedings.