SANITATION DIST. NO. I OF JEFFERSON COUNTY et al. v. CAMPBELL et al.

Court of Appeals of Kentucky.

June 6, 1952.

Joseph R. Rubin, Franklin P. Hays, Skaggs, Hays & Fahey, Louisville, for appellants.

Laurence G. Duncan, Co. Atty., Louisville, for Louisville and Jefferson County Board of Health.

J. W. Jones, Louisville, for appellees.

Woodward, Hobson & Fulton, Wyatt, Grafton & Grafton, Louisville, amici curiæ.

STANLEY Commissioner.

The question is whether a statute and regulations adopted by virtue thereof are constitutionally valid insofar as they may compel connection of abutting property

with a public sewer system where its sewage is disposed of through private septic tank facilities originally installed in accordance with state health regulations.

Sanitation District No. 1 of Jefferson County is a municipal corporation or political subdivision organized under the provisions of Chapter 220, Ky. Rev. Statutes. The Louisville and Jefferson County Board of Health is a similar public corporation organized under the provisions of Chapter 212, particularly KRS 212.350. We shall refer to these respective bodies as "District" and "Board."

The District has constructed and is maintaining a sewerage system in the St. Matthews area, an unincorporated, thickly populated, urban community. The cost of construction was financed by revenue bonds payable with funds raised by service charges. See Somsen v. Sanitation Dist. No. 1 of Jefferson County, 303 Ky. 284, 197 S.W.2d 410; Engle v. Bonnie, 305 Ky. 850, 204 S.W.2d 963; Sanitation Dist. No. 1 of Jefferson County v. Louisville & Jefferson County Metropolitan Sewer Dist., 307 Ky. 422, 208 S.W.2d 751; Sanitation Dist. No. 1 of Jefferson County v. City of Louisville, 308 Ky. 368, 213 S.W.2d 995.

KRS 220.170 defines the duties and powers of the district and confers upon it authority to adopt all necessary rules and regulations for its proper management and "for carrying into effect the other objectives for which the district is formed." Par. (5). Specific powers are vested by KRS 220.280. In paragraph (3), to serve its purposes, the District "may require the use of the improvements of the district by persons and public corporations included within the district and for which the improvements were installed." KRS 220.320 provides for the recognition and enforcement of the authority conferred.

Pursuant to the statutory authority, the District adopted broad and definitive regulations. Sec. 26 is as follows:

"The owner of all houses, buildings, or properties used for human occupancy, employment, recreation, or other purposes, situated within the District and abutting on any street, alley or right-of-way in which there is located a public sanitary sewer of the District, is hereby required at his expense to install suitable toilet facilities therein, and to connect such facilities directly with the proper public sewer in accordance with the provisions of the State Board of Health and/or the Jefferson County Board of Health."

The following section of the Regulations requires where a public sanitary sewer is not available, that private sewage disposal systems be used, the same to comply with the state plumbing code and the requirements of the State and County Boards of Health.

The statutes confer upon county boards of health broad powers relating to the public health. KRS 212.210 et seq. Although, as it appears, without express statutory authority, the Board adopted certain specific regulations, among which is that no person shall maintain upon any lot or parcel of ground situated on any street, alley, or road in Louisville or Jefferson County "where there is a public sewer and water supply available for use of such unit of ground, any system of disposal of human excreta except by means of water closets connected with such sewers and water supply." Regulation 303.301.

Three owners of property abutting the sewer line in the St. Matthews area, and served by a public water supply, resisted the demands of the District and the Board that they connect their property with the sewer system. They filed this suit seeking injunctive protection against prosecution and a declaration of rights. The plaintiffs charge the statute and regulations are within the constitutional bar of arbitrary action, Sec. 2 Ky. Const., and the requirement of the due process provisions of the state and federal constitutions. A stipulation of the facts was filed. Pertinent to the present issue are these agreements: Parts of the sewer system had been in use since July 1, 1949, and the entire system was completed about June 1, 1950. Prior thereto the residents of St. Matthews had maintained individual sanitary systems consisting of septic tank facilities. Connection with the sewer by other residents had

continued progressively. Approximately 3,300 residences had done so and 125 were continuing to use septic tanks. Those of the plaintiffs "are not less effective or less efficient than average working septic tank facilities and the original installation thereof was approved by the State Board of Health." Sewage from the public system had backed up in the basements of forty buildings connected with it during the winter of 1949 and spring of 1950. These buildings are not on streets on which the plaintiffs' property is located. The defendants further expressly admitted in their pleadings that they were "aware of certain defects" in the sewer system for which the Board is "constantly seeking methods of remedying." They stated that the sewer system "is reasonably safe and adequate and that there have been no major difficulties as to the streets on which each of the plaintiffs reside."

The circuit court was of the opinion that the duty of the Board is to see that no unhealthful conditions exist, and the duty of the District is to construct sewers to make it possible to eliminate unhealthful conditions; that the regulations requiring all parties "whether unhealthful conditions exist or not to connect to same would be unreasonable and arbitrary since it is possible for the owners of the lots to operate and maintain some other form of disposal in such a manner so that same would not create a health menace or any unhealthful conditions." It was accordingly adjudged that the foregoing regulations of the Board, 303.301, and of the District (26) are invalid and unenforceable. It was further adjudged that KRS 220.280 (3), above quoted, violates Sec. 2 of the Ky. Const. and the 14th Amendment of the Federal Constitution and is, therefore, void and unenforceable.

The appellees, property owners, invoke cases which declare invalid regulations of administrative boards which go beyond statutory powers, such as Jefferson County v. Jefferson County Fiscal Court, 269 Ky. 535, 108 S.W.2d 181; Bloemer v. Turner, 281 Ky. 832, 137 S.W.2d 387; Robertson v. Schein, 305 Ky. 528, 204 S.W.2d 954; Henry v. Parrish, 307 Ky. 559, 211 S.W.2d

418. In the present case, the legislature defined the purposes and objects of sanitation districts to be in part "to provide for the collection and disposal of sewage and other liquid wastes produced within the district; and incident to such purposes and to enable their accomplishment, to construct * * * sewers * * * and do all other things necessary for the fulfillment of the purposes" of the Act. KRS 220.030(4). The purposes are elsewhere manifested to be to maintain the public health in cooperation with the health authorities. To that end, as we have pointed out, the legislature specifically authorized a sanitation district to require the use of its facilities and adopt and enforce regulations to attain its objectives. KRS 220.170(5).

■ As stated in Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761, it is well settled that statutes relating to public health are liberally construed in order to effectuate their purpose.

On their face, and as of general application, the rules and regulations of the District are more clearly within the statutory authority than were those held to be valid in Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S.W.2d 821; Young v. Willis, 305 Ky. 201, 203 S.W.2d 5.

■ It is readily apparent that the sweep of the judgment striking down the statute and the regulations is too broad and goes beyond the issue in the case. That issue is confined to property which may be served by private sewer facilities which do not constitute a health hazard. The question is whether owners of such property may be compelled, nevertheless, to connect it with the public system and become chargeable with the costs incidental thereto, especially in the light of the admissions of defects in it. The validity of a statute, ordinance or regulation is to be determined by its general purpose and efficiency to accomplish the end desired rather than by its effect in a particular application or operation. A statute may be valid as to one state of facts and invalid as to another, or the manner in which it is administered

may be constitutionally offensive. Some property may be protected from the legislation while other property may not be. 11 Am.Jur., Constitutional Law, Secs. 102, 163, 164. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239.

It is no longer an open question that the state, through a power delegated to a subdivision, may require a citizen to take such action in relation to his property as will abate a nuisance or other condition inimical to the public health. In the present relationship, McQuillin, Municipal Corporations, Sec. 3130, states the law to be generally:

"Municipalities are generally authorized to compel property owners to make connection with a sewer within a reasonable distance when the public health requires it, at their own expense, or the connection may be made by the city and the cost charged against the property owner, all of which may be provided for by statute or ordinance, in the exercise of the city's police power. It may enforce the requirement by appropriate ordinance penalties. So the municipal corporation may require property owners on sewered streets to connect their closets, bathtubs, etc., with the sewer, and may enforce the observance of such a regulation by fine."

This is in accord with the decisions of this court dealing with this particular sanitary district above cited and with similar conditions and remedial processes. Treasy v. City of Louisville, 137 Ky. 289, 125 S.W. 706; Baker v. City of Princeton, 226 Ky. 409, 11 S.W.2d 94; Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761; Francis v. City of Bowling Green, 259 Ky. 525, 82 S.W.2d 804; Stegner v. Commer, 296 Ky. 334, 176 S.W.2d 395.

The circuit court rested his decision of invalidity upon Purnell v. Maysville Water Co., 193 Ky. 85, 234 S.W. 967, 23 A.L.R. 223. He regarded that as authority for leaving the property owners free to use whatever method seems best to them so long as they do not create a health menace. In the Purnell case the State Board of

Health found, upon investigation, that the water being furnished to the city was impure and ordered the company to abate the nuisance by treating the water with chlorine and installing a plant for sedimentation, filtration and chlorination. The court held the Board had exceeded its powers in directing a particular method of purification, although it did have authority to require the company to stop furnishing impure water. We held the water company had the right to adopt any system it deemed expedient and best that would produce the desired result. The argument made in the instant case is that the appellees have adopted a plan which is sufficient to accomplish the same results as connecting with the public sewer. We think the case is distinguishable. The duty and function of the Board of Health was policing the public for the protection of the health of the community. To that end it had authority to require the abatement of a source of contamination but did not have authority to direct what should be substituted to accomplish the demand. In the instant case, the statute does not itself condemn any specific condition or facility but does vest the power to require the use of available sewer facilities by all property in a community.

In Nourse v. City of Russellville, supra, the ordinance attacked (1) condemned water closets and cess pools in a city and ordered their abatement, and (2) required connection with the public sewer by abutting property and the use of approved septic tanks for property which did not. The aim was to abolish sources of disease, the substitutions following of necessity. The ordinance was held to be within the city's police power whether it be regarded as inherent or delegated by the state. In the course of the opinion, we discussed at length the perils inherent in the existing unhygienic conditions and stated that "it has been demonstrated that nothing contributes more to secure the preservation of public health than a sanitary system of sewage disposal, whether it be the modern sewers or septic closets." [257 Ky. 525, 78 S.W.2d 765.] Francis v. City of Bowling Green, 259 Ky. 525, 82

S.W.2d 804, is like the Russellville case in many respects and the same conclusions were expressed.

In the present case there is no finding or statement of fact as to the efficiency of the plaintiffs' private disposal plants. To avoid enforcement of the statute and the regulations, it was at least the duty of the plaintiffs to show that the public health did not require them to discontinue those methods and to connect with the public system. The stipulation is only that their facilities "are not less effective or less efficient than average working septic tank facilities." The court cannot take judicial notice of the efficiency of "average working septic tank facilities." However, if it be assumed that they are at present adequate and do not in themselves constitute a menace to the health of the community, we think it is yet within the power of the state, speaking through the statute and through the District, to require connection and use of the public system. It is for the hygienic benefit of the entire area. Public health is a community matter. And, as stated in Nourse v. City of Russellville, supra: "The community is to be considered as a whole in the matter of preservation of the health of all inhabitants, for a failure by a few to conform to sanitary measures may inflict ill health and death upon many." Though the action of the governing boards charged with responsibility may work a hardship on one or more individuals whose facilities may be sanitary, their action cannot be regarded as unconstitutionally arbitrary, or the taking of property without due process of law. It would seem that although properly operated private septic tanks may afford a sanitary disposal system, the publicly maintained sewage system of the whole community is undoubtedly better as doing away with potential as well as actual health menaces. This conclusion is supported by the cases.

In Board of Health of Covington v. Kollman, 156 Ky. 351, 160 S.W. 1052, 49 L.R.A., N.S., 354, the Covington Board of Health had found it to be a fact universally recognized that handling milk in open containers was a health menace. We sus-

tained its regulation requiring milk to be dispensed only in sealed bottles. In Baker v. City of Princeton, 226 Ky. 409, 11 S.W.2d 94, we held that a city under statutory authority could build a sewer system and assess the cost against all property to be served even though the objectors had previously paid a consideration for tapping a small regional city sewer, which would be replaced by the new and larger system. It did not appear that there was any special health menace in the existing arrangement, although that condition existed elsewhere in the city. In Stegner v. Coomer, 296 Ky. 334, 176 S.W.2d 395, 396, we held that a property owner could not complain of the loss of an easement across an alley and private property for a private sewer serving the complainants' property and connecting with a city sewer where the city had built a new line through the alley and required connection by all abutting property. The reason was, "When the public sewer was constructed in the alley on which appellants' land abutted, the duty of the abutting property owner to connect the house drains with the public sewer attached, and his right to the easement theretofore enjoyed by him ceased." In District of Columbia v. Brooke, 214 U.S. 138, 29 S.Ct. 560, 562, 53 L.Ed. 941, an owner contended that a law similar to the present regulations was invalid, especially as it applied to her property because it was not shown she was maintaining a nuisance. Said the court:

"The second contention of defendant in error is that the record fails to disclose that any nuisance existed on her property, or that the means of drainage already there was unsanitary or insufficient, or that any necessity existed for making the connection. This contention seems to be made in this court for the first time. It certainly received no notice from the court of appeals, and the fact that it assumes that there was means of drainage on defendant in error's lot is not alleged in her petition. But, suppose the fact had been alleged; a property owner cannot urge against the drainage system of the District that he had

adopted a system of his own, and challenge a comparison with that of the District, and obey or disobey the law according to the result of the comparison. The contention virtually denies any power in Congress to create a system of drainage to which a lot owner must conform."

This case was followed by Hutchinson v. City of Valdosta, 227 U.S. 303, 33 S.Ct. 290, 291, 57 L.Ed. 520. The court considered an ordinance which condemned and prohibited open toilets and required owners of property on any street along which there was a sewer to install water closets and connect them with the sewer. The owner sought to prohibit the enforcement of the ordinance. It would have been necessary for him to build another room to his small house at considerable cost. The opinion recites, "That part of the city where her residence is situated is thinly settled, and there is no necessity on account of health or sanitary conditions of the city or any part thereof to force her, against her wish, to connect a water-closet in her house by a pipe to the main sewer, and under the petition filed by the appellant would subject her and her family to the noxious gases, odors and noisome smells from the sewer, thereby endangering her health and impairing her comfort and that of her family, and thereby creating a nuisance." The court rejected the arguments of constitutional invalidity. At the conclusion of the opinion the Court said:

"It is the commonest exercise of the police power of the state or city to provide for a system of sewers, and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. District of Columbia v. Brooke, 214 U.S. 138, 29 S.Ct. 560, 53 L.Ed. 941. It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health. There is certainly nothing in the facts alleged in the bill to justify the conclusion that the city was in-

duced by anything in the enactment of the ordinance other than the public good, or that such was not its effect."

We are of opinion, therefore, that the court should have held the statute and regulation of the District valid and entered orders necessary to effectuate them. It is not necessary to pass on the validity of the regulation of the Board of Health.

■ One of the controversies submitted was the validity of Regulation No. 35 of the District which provides for a tapping and inspection fee of $25 to be paid by the owners of residences. Approval of the plumbing methods and the connections is required. The court held the charge to be valid. The property owners have prosecuted a cross-appeal from that part of the judgment. They do not claim the charge is unreasonable. Their contention of invalidity rests principally on Henry v. Parrish, 307 Ky. 559, 211 S.W.2d 418.

That case holds the Louisville & Jefferson Co. Board of Health could not lawfully impose permit fees upon food establishments to help pay the cost of inspection. The decision is rested upon the proposition that the Board is part of the executive branch of the government, and, assuming for the argument that it would have been competent to vest legislative power in the Board to raise revenue, such power had not been bestowed by the General Assembly. Charges for sewer services are not taxes but are like tolls and rentals. The statute creating the district authorized it to issue revenue bonds for the cost of construction and to make charges against users of its facilities for the purpose of liquidating the same and maintaining and operating the facilities. They are an incident in the accomplishment of a proper end of promoting public health and the common welfare and have a reasonable relation thereto. The judgment is sustained by many authorities. See Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761; Francis v. City of Bowling Green, 259 Ky. 525, 82 S.W.2d 804; Veail v. Louisville & Jefferson County Metropolitan Sewer Dist., 303 Ky. 248, 197 S.W.2d 413; Louisville & Jefferson County Met. Sewer Dist. v. St. Matthews Sanitary Association, 307 Ky.

348, 208 S.W.2d 490; Louisville & Jefferson County Met. Sewer Dist. v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S.W.2d 122, 4 A.L.R.2d 588; Bond Bros. v. Louisville & Jefferson County Met. Sewer Dist., 307 Ky. 689, 211 S.W.2d 867; certiorari denied 339 U.S. 943, 70 S.Ct. 796, 94 L.Ed. 1358.

On the original appeal the judgment is reversed. On the cross appeal it is affirmed.