## JOHNSON v. CITY OF LOUISVILLE et al.

Court of Appeals of Kentucky.

Oct. 6, 1953.

———◆———

Garner M. Petrie, Louisville, for appellant.

Gilbert Burnett, C. Hayden Edwards, Lawrence G. Duncan, Blakey Helm, Louisville, for appellees.

STANLEY, Commissioner.

Louisville by ordinance has declared necessary for the protection of the public health of its citizens the construction of a plant and facilities for the treatment and disposal of sewage before its discharge into the Ohio River from public sewers. It is necessary not only for the pressing local need but to meet a demand and order of the state Water Pollution Control Commission, KRS 220.-580–220.650, created as a state agency for purposes of the Ohio River Valley Sanitation Compact, an interstate compact approved by Congress to abate and control pollution of the waters of the Ohio River basin, Acts of 74th Congress, 2d Session, Joint Resolution June 8, 1936, Public Resolution 104, 49 Stat. 1490, 33 U.S.C.A. § 567a, and Act June 30, 1948, 80th Congress, 2d Sessions, Public Law 845, 62 Stat. 1155, 33 U.S.C.A. § 466 et seq., and ratified by the General Assembly of Kentucky. Acts of 1940, Ch. 148, now KRS 220.550–220.570. To finance the construction of the facility, the ordinance directs submission to the voters of the city at the ensuing election the question of incurring an indebtedness of $6,000,000 by the issuance of general obligation bonds and levying an annual tax for interest and the sinking fund. The circuit court approved the proposed action in this declaratory judgment suit.

■ Throughout many years Louisville financed the construction of its sewers by taxation or general obligation bonds. The question of its power to do so now arises from the relationship and powers of the Louisville and Jefferson County Metropolitan Sewer District (hereinafter Metropolitan), itself a municipal corporation functioning both within and without the city boundaries. See Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232. Our several previous cases relating to Metropolitan and the city and their respective or joint operations related to the control, management and operation of the facilities turned over to Metropolitan by virtue of an ordinance adopted pursuant to an enabling statute enacted in 1946. KRS, Ch. 76. The question here is whether the city may lawfully make an additional capital investment in the sewer system for such fundamental purpose as that contemplated. Complication springs from the duality of the two municipal corporations and the fact that Metropolitan covers and serves not only the city of Louisville but several smaller incorporated towns and the unincorporated part of the county. The challenge of what is effectually an appropriation of city funds rests upon the view that it would be made to a separate distinct municipality, which ordinarily cannot be legally done.

■ It seems to us that incurring the proposed bonded indebtedness and the appropriation of the proceeds, if approved by the voters, are within the power of the city. The conclusion rests upon the grounds that (1) legal title to the city sewer system has remained in the City of Louisville and its

power to finance its improvement has been left unimpaired; and (2) though the disposal plant will also serve property beyond its boundaries, the entire system serves the health of its people. We think a proper interpretation of the statutes and a reasonable consideration of the status of the sewer property and inherent power of a municipality to protect public health sustain the conclusion. We proceed with the reasons.

1. The terms of the enabling statute and of the pursuant ordinance are that the "existing sewer and drainage system and facilities" of Louisville should be "assigned, transferred and dedicated to the use of and be in possession and under the jurisdiction, control, and supervision" of Metropolitan. The enactment defines, in general, the character and degree of divestment of the city's interests and rights and the limit of Metropolitan's powers. There is no reference to a transfer of the legal title. Metropolitan does have power to construct additions to the system turned over to it and power to acquire additional property. But payment therefor must be only from current income or proceeds of bonds payable solely out of revenues, its schedule of rates for city users being subject to the approval of the board of aldermen of Louisville. KRS 76.090; Louisville & Jefferson County Metropolitan Sewer District v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S.W.2d 122, 4 A.L.R. 2d 588.

The history of the Louisville sewerage system and the terms of the Metropolitan statute are summarized in Veail v. Louisville & Jefferson County Metropolitan Sewer District, 303 Ky. 248, 197 S.W.2d 413, 416. In sustaining the validity of the Act and right of the city to proceed under it, we said in the course of the opinion:

"The transfer to the Metropolitan Sewer District is a mere transfer of custodianship; and, even though the taxpayers of the City of Louisville own the physical properties of the sewer system, they have the right to entrust this property to the management of another municipality when authorized to do so by the Legislature."

Some remarks in Sanitation District No. 1 v. Louisville & Jefferson County Metropolitan Sewer District, 307 Ky. 422, 208 S.W.2d 751, that the whole tenor of the Act of 1946 is that no further debt should be assumed or imposed upon the City of Louisville payable out of its general revenues for new construction, were not germane to the legal questions before the court and are obiter dicta; hence, not a binding declaration of interpretation of the statute.

Metropolitan is expressly authorized:

"To establish, construct, operate, and maintain, as a part of the sewer and drainage system of the district, sewage treatment and disposal plants and systems and all the appurtenances and appliances thereunto belonging. Such sewage treatment and disposal plants may be located in the city, or beyond the limits of the city in the county in which the city is located, as the board may deem expedient." KRS 76.080(4).

2. Approximately six percent of the users of the sewer system maintained and managed by Metropolitan reside outside the city boundaries. The incidental hauling of sewage for small communities (which pay for the service) does not invalidate the major purpose of the plant, i. e. to dispose of Louisville's sewage and to conform to the law. The power to do all of this is implicit in the power to transfer the city's existing system, particularly its trunk lines, to Metropolitan for integration into the enlarged system, which drains entirely through the city's portion into the Ohio River. See Louisville & Jefferson County Metropolitan Sewer Dist. v. St. Matthews Sanitary Association, 307 Ky. 348, 208 S.W.2d 490; Louisville & Jefferson County Metropolitan Sewer District v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S.W.2d 122, 4 A.L. R.2d 588. We do not regard Board of Education of City of Corbin v. City of Corbin, 301 Ky. 686, 192 S.W.2d 951, 952, as authority for denying the power of the city to appropriate money for necessary additions to the facilities to be used in part by outside property. It is held in the Corbin case that a city may not appropriate its funds to sup-

plement salaries of teachers employed by an independent school district, although the boundaries are coterminous. The distinction lies in part in the complete independence and separation of the two municipal corporations and the segregated functions of the city and school district, while here Metropolitan is in the nature of a subsidiary operational municipality, although possessing extraordinary and independent powers of its own. In the Corbin case we pointed out that Sec. 179 of the Constitution "does not prohibit a municipality from participating with another municipality in a function it is permitted or required to perform by itself and by which its inhabitants will reap a commensurate benefit". More than this, the preservation of public health of its inhabitants by building and maintaining an adequate sewer system exists inherently, not only as a right but as a manifest duty of a city, Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761, and power to exercise that indispensable right and duty cannot always be localized or confined to its boundaries. Health nuisances beyond the boundaries may be dangerous within the boundaries. In point on the present issue is Kesselring v. City of Louisville, Ky., 257 S.W. 2d 596, 598, sustaining the validity of the issuance and sale of general obligation bonds of the city and use of the proceeds for capital improvement of the General Hospital, the title to which is in the Louisville & Jefferson County Board of Health, a separate body politic. The joint board of health, as stated, "is but a means of carrying out a proper and necessary governmental function for the city and county. The city reaps the same benefits from the activities of the board as it formerly reaped from its own efforts." And in Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232, 237, holding invalid amendments to the Metropolitan statute which would have extended certain authority of the city government beyond its geographical limits, we pointed out that as exceptions to the limitation of power, city ordinances and officers may do so "by certain classes of contract, or under a power implied to match responsibility imposed or necessary to effectuate what is expressed."

We think the whole set-up or plan of building, improving, maintaining and operating and the necessities of the situation of protecting public health of the inhabitants of the city is within its implied powers although benefiting inhabitants of the county outside the geographical boundaries.

Accordingly, the judgment is affirmed.