O. O. ASHLEY, Appellant,

v.

CITY OF GILMER, Appellee.

No. 6743.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 9, 1954.

Mat Davis, Gilmer, for appellant.

Florence & Florence, Gilmer, for appellee.

WILLIAMS, Justice.

Appellee, City of Gilmer, the owner of a water and sewer system, operating under the Home Rule provisions of Title 28,

Vernon's Ann.Civ.St. of Texas, enacted an ordinance in July, 1952, under which non-resident water users and customers were charged double the rate to that paid by those who resided within its corporate limits.

In this action, filed March 10, 1953, appellant O. O. Ashley, individually and in behalf of the other 30-odd non-resident water customers similarly situated, sought in his prayer for relief, "That said City be permanently enjoined from charging plaintiffs and the other non-resident customers of the City of Gilmer any higher rates for water than it charges its water customers within its city limits." Issue was joined on appellant's motion for a summary judgment and appellee's written verified reply thereto. This motion for summary judgment was denied and the cause proceeded to trial on the issues of fact joined by the pleadings. From the evidence adduced the trial court "found as a fact" that the plaintiff was "not entitled to the injunctive relief sought" and denied same.

A summary of the evidence that follows was introduced by appellee in explanation, defense and justification for its enactment of the new water rate here under attack. The City voted tax bonds in 1906, 1916, 1924, 1935, and 1940. Taxes had been levied and are presently being levied on the properties situated within its corporate limits to service the interest and retire above bonds on the maturity dates of same. From the proceeds derived from the sale of above bonds the city had dug deep-water wells to secure the necessary water supply; built a water and sewerage system within its corporate limits; and had extended such system from time to time within its corporate limits. In 1949 the City voted an issue of revenue bonds which under Article 1118a, Vernon's Ann.Civ.St. of Texas, is payable only out of revenue derived from the operation of such water and sewer system. The City used the proceeds from this issue to dig and equip an additional water well; to construct a larger water-storage tank; and to repair, improve and extend its system to take care of the increased number of its water customers within its corporate limits.

The evidence does not disclose the total amount of the tax bonds which were outstanding in July, 1952 or the unpaid amount of the revenue bonds. The evidence clearly discloses that the net revenue from its water and sewer system was insufficient to meet the payments of all the bond issues, and it had been and was then necessary to continue to levy the tax called for in the tax bonds.

Its employees who read the water meters traveled on foot in reading the water meters within the city limits because of the proximity and density of such customers. An employee who read the meters of customers beyond the city limits required the use of a motor vehicle because of the distance involved between such customers. This was furnished by the City. This same element of additional expense was also incurred in the frequent inspection for any water line breaks or leaks. More meters would be read within a given time within the city than those scattered beyond its limits.

The water mains, wells, machinery and pumping equipment which had been constructed from the proceeds of both the tax and the revenue bonds were utilized in serving both resident and non-resident water users. No attempt was made to ascertain what proportion each class of bonds contributed to the total valuation of the system. If material, we are unable to determine the proportion. Three or four of the non-resident users resided south of Gilmer. The deep-water wells, the pumping equipment and large water-storage tank were all situated near the eastern edge of the corporate limits. The evidence does not disclose the location of the other non-resident users. To deliver the water with a reasonable water pressure and for the water to carry chlorine, a state health requirement, to the non-resident users required additional pumping. Such additional pumping, fuel, and wear and tear on the machinery would increase the cost of delivery of the water as the distance increased.

The City pleaded the foregoing factors and elements in defense of its action in enacting the new ordinance wherein the water

rate for non-resident users was fixed at double the rate charged for resident water users. Appellant asserts that such elements and factors so pleaded by the City constituted no legal defense to its action in enacting the new ordinance; and that the evidence above detailed as a matter of law "did not justify or excuse the trial Court in denying the injunctive relief sought." Appellant asserts in a further point, apparently grounded on his theory of the law, that such action of the City "was discriminatory, excessive, unreasonable, arbitrary, unjust, capricious, malicious and done with evil intent and contrary to public policy."

Appellant cites and relies upon the decision by our Supreme Court in City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W. 2d 622, in support of the points urged. The principles of law therein discussed, when applied to the defense urged here and the factors hereinabove detailed, will not warrant this Court to disturb the action of the trial court in denying the injunctive relief sought. The dissenting opinion affords appellant still less support.

Here the differential in the rates so imposed between resident and non-resident users was grounded on additional expenses necessarily incurred by reason of the physical factors involved in serving the non-residents at more distant points. The evidence does not pin-point in dollars the additional expense incurred by reason of the physical factors. The evidence does not disclose the monthly revenue derived from the 30 non-resident users or the ratio that the additional rate would bear to the additional expenses. Appellant attacked such rate. "A rate for the service or produce of a public utility fixed or approved by public authority is prima facie reasonable, and the burden of proving its unreasonableness is on one asserting it". 73 C.J.S., Public Utilities, § 26; Ford v. Rio Grande Gas Co., 141 Tex. 525, 174 S.W.2d 479.

The differential in the rates finds support in the tax angle. The resident water users were then and had been paying through the years a tax on their property within its corporate limits to service the bonds outstanding against its system. The non-resident users had paid no such taxes on their property situated outside the corporate limits. Prior to the enactment of the ordinance under attack, both classes had paid the same water rate. The record reflects that prior to the enactment of the ordinance under attack the City considered this tax angle, the additional expenses incurred on account of the physical factors involved in serving the non-residents, and the deficit being incurred in the operations of its water system.

In Louisville & Jefferson County Metropolitan Sewer Dist. v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S.W.2d 122, 126, 4 A.L.R.2d 588, it is reasoned with respect to the tax angle in the present record in which we are wholly in accord that "The condition here is as if two men were to enter into partnership * * *. One contributes no part of the physical property. The other contributes a building and equipment of a going concern on which he has spent and still owes a substantial sum, secured by a mortgage, which he must personally pay with annual interest. We suppose there would be no controversy over the right of the owner to have his ownership and carrying charges recognized in the financial operations of the business venture, or as to his right of consideration in the fair division of the earnings. To allow him nothing on that account would not be reasonable. So it seems to us that a similar consideration of the users of the present sewer and drainage plant requires that there be a differential, for it is reasonable and has a logical and fair basis. Otherwise, there would be inequality. Those who have paid and continue to pay taxes to raise the sinking fund and interest would bear a greater burden of maintaining their own property, while those who live outside the city would enjoy all the privileges of the property and a 'free ride' upon their facilities. This would be the equivalent of a differential in favor of those who live outside the city." See cases of like import annotated in 4 A.L.R.2d pp. 598, 599.

The points urged are respectfully overruled, and the judgment is affirmed.