**CITY OF SOUTH HILLS et al., Appellants,**

v.

**SANITATION DISTRICT NO. I OF KENTON and Campbell Counties, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 12, 1958.

John J. O'Hara, Blakely, Moore & Blakely, John H. Klette, Jr., Covington, for appellants.

Stanley C. Moebus, Newport, for appellee.

Wyatt, Grafton & Grafton, C. W. Grafton, Louisville, amicus curiae.

CULLEN, Commissioner.

South Hills, a sixth-class city, and Fort Wright, a fifth-class city, brought action against Sanitation District No. 1 of Kenton and Campbell Counties, seeking a declaratory judgment as to the validity of contracts by which the cities agreed each to contribute $5,000 to the district toward the cost of constructing a sewer trunk line running from the cities to a main collector sewer which terminates in a treatment plant of the district. The trial court entered judgment upholding the contracts, and the cities have appealed.

The two cities are embraced in the sanitation district, which was organized and operates under KRS 220.010 to 220.540. The district has been in existence for a number of years, and has constructed a treatment plant and sewer lines to serve various parts of the district, but prior to the making of the contracts here in question the lines did not extend to the two cities. Fort Wright's sewer system connected with the trunk line of South Hills' system and the sewage from both systems emptied into an open ravine outside the limits of South Hills.

An agreement was worked out under which the district agreed to construct a sewer trunk line running to the city limits of South Hills, if the two cities would share part of the cost. The cities each made a contract to pay $5,000 toward the cost of the line, the contracts being conditioned, however, on court approval. South Hills' contract calls for payment out of the general fund of the city, whereas Fort Wright's contract provides for payment out of a sewer charge to be imposed by the city. The line actually has been built by the district, at a total cost of some $21,000, so the question becomes one of whether the district can enforce its contracts for partial reimbursement from the two cities.

We think the question is one of statutory construction. As we read the statute, KRS 220.010 to 220.540, it contemplates that the cost of facilities of the district shall be borne by charges imposed by the district upon users. The district constitutes an autonomous political subdivision with full authority within its boundaries as to the construction and operation of sanitation improvements. KRS 220.110, 220.260, 220.280.

The only references in the statute to payments by cities towards the cost of facilities of a sanitation district are found in KRS 220.080(3) and 220.536(2). The former provides that in the case of original creation of a district, the governing body of a city of the second or third class shall determine by ordinance whether the city shall be included in the district or whether the city shall bind itself to pay the charges for the services of the district furnished in the city. The latter provides for a similar determination by the governing body of a city of the second, third, fourth, fifth or sixth class in the event it is proposed that such a city be *annexed* to an existing district. Neither of these statutes is applicable here, because the two cities in question, being of the fifth and sixth classes, were part of the original district. However, these statutes seem to declare a legislative policy that a city shall not incur an obli-

gation to the district unless the city elects not to become a part of the district.

We conceive that a group of property owners might elect, of themselves, to make a contribution towards the cost of constructing a facility of the district designed to serve them, in order to obtain service sooner than the district otherwise would be able to provide it. But we can find no authority for a city to make this election on behalf of the property owners, where the city is a part of the district. The governing body of the district, rather than the governing body of the city, represents the property owners in the city for the purpose of making decisions concerning the furnishing of sanitation services by the district.

If the two cities desire to build or extend their own sanitation facilities they may do so, subject, however, to the approval of the sanitation district under KRS 220.260 and 220.280(3). But there is no basis upon which they may charge the people of the city for facilities which will beong to the sanitation district and for the cost of which the district is authorized to impose charges. It appears that the only purpose of the contracts here in question is to speed up the furnishing of service by the district. It seems to us that if there is delay in extending the service of the district the remedy is in an adjustment of the financing program of the district, and not through substitution of the cities as the financing authority.

The district relies upon Johnson v. City of Louisville, Ky., 261 S.W.2d 429. However, what was approved in that case was an expenditure by the city upon a sewer system within the city limits, to which system the city held legal title. Also, in that case the sanitation district law was not involved. So the case is not in point here.

The judgment is reversed, with directions to enter judgment holding the contracts invalid, on the ground that they violate the provisions of KRS 220.010 to 220.540.