RENDERED: SEPTEMBER 24, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0491-DG

LOUISVILLE & JEFFERSON        APPELLANT/CROSS-APPELLEE
COUNTY METROPOLITAN
SEWER DISTRICT


ON REVIEW FROM COURT OF APPEALS
V.        CASE NO. 2017-CA-0879-MR
JEFFERSON CIRCUIT COURT NO. 13-CI-000218


MARK D. HILL        APPELLEE/CROSS-APPELLANT


AND


2019-SC-0523-DG

MARK D. HILL        APPELLANT/CROSS-APPELLEE


ON REVIEW FROM COURT OF APPEALS
V.        CASE NO. 2017-CA-0879-MR
JEFFERSON CIRCUIT COURT NO. 13-CI-000218


LOUISVILLE & JEFFERSON        APPELLEE/CROSS-APPELLANT
COUNTY METROPOLITAN
SEWER DISTRICT


**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING IN PART, REVERSING IN PART AND REMANDING</u>**

Louisville & Jefferson County Metropolitan Sewer District ("MSD") appeals from the portion of the Court of Appeals' Opinion reversing the trial court's grant of summary judgment in MSD's favor on Mark Hill's claim under the Whistleblower Act, KRS[1] § 61.101 *et seq.* Hill, on cross-appeal, challenges the Court of Appeals' affirmation of the trial court's grant of summary judgment in MSD's favor on Hill's claims under the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010 *et seq.* Based on a review of the record and applicable law, we affirm the Court of Appeals as to the dismissal of Hill's KCRA claims but reverse the Court of Appeals' determination that MSD is subject to the Whistleblower Act. In short, the trial court correctly granted summary judgment in favor of MSD on all of Hill's claims.

## I. BACKGROUND

MSD employed Hill for approximately two decades - from 1990 until his termination in October of 2012. At the time of his termination, Hill's position was Administration Services Manager; his job responsibilities included procuring contractors for facility maintenance on MSD property and approving contractor invoices submitted to MSD for payment.

In 2011, the Kentucky State Auditor of Public Accounts ("APA") began auditing MSD and, as part of its audit, interviewed Hill twice. The auditor's final report found that Hill had violated numerous MSD policies, including purchasing IT equipment without approval, favoritism in the hiring of private

---

[1] Kentucky Revised Statutes.

vendors, use of MSD technological equipment for private purposes, and improper payment for services. Thereafter, MSD initiated an independent investigation concerning the allegations raised in the auditor's report, and MSD suspended Hill with pay during the course of this investigation. MSD's attorney who led the investigation also interviewed Hill and the results of the investigation ultimately corroborated the APA's findings: Hill had violated procurement and purchasing regulations, engaged vendors who were not properly certified, purchased a laptop without IT department approval, and inappropriately approved payments for services on two occasions.

During his discussions with MSD's attorney, Hill alleged he was being made a scapegoat for one of the alleged improper payments. Hill then hired an attorney who sent a letter to MSD officials seeking whistleblower protection for Hill. The letter stated that during the interview, Hill had made good faith reports of waste, fraud, mismanagement and violations of law that occurred at MSD. Following the audit and MSD's independent investigation, MSD terminated Hill's employment for violating its policies.

Thereafter, Hill filed a complaint against MSD alleging violation of Kentucky's Whistleblower Act and racial discrimination[2] in violation of the KCRA. After conducting discovery, MSD moved for summary judgment, arguing that it was not an "employer" as that word is defined in the Whistleblower Act and, regarding the KCRA claims, Hill had not met his

---

[2] Hill is African American.

3

burden of production. Following a hearing, the trial court denied MSD's motion for summary judgment. With respect to Hill's Whistleblower claim, the trial court initially found that MSD met the definition of "employer" under the Act since it was a political subdivision of the Commonwealth. The trial court further allowed Hill's KCRA claims to proceed. Hill subsequently filed amended complaints, alleging retaliation and presenting a "mixed motive" theory for his racial discrimination claim.

MSD again moved for summary judgment on Hill's Whistleblower Act claim, urging the trial court to reconsider its prior decision in light of this Court's recent holding in *Coppage Constr. Co. v. Sanitation Dist. No. 1*, 459 S.W.3d 855 (Ky. 2015), which MSD argued reaffirmed its position that it was not an "employer" within the meaning of the Act. Based on the *Coppage* holding, the trial court granted partial summary judgment in MSD's favor, finding that the analyses under sovereign immunity and the Whistleblower Act were the same and because the *Coppage* decision made clear that MSD would not be entitled to sovereign immunity, MSD was not to be considered an "employer" under the Whistleblower Act. Later, the trial court granted MSD's motion for partial summary judgment on Hill's remaining KCRA claims. The trial court found that Hill had failed to present any affirmative evidence in support of his claim that he was terminated because of his race or in retaliation. Instead, the trial court found that the only affirmative evidence in the record supported MSD's stance that Hill had been terminated due to violations revealed by the audit.

4

On appeal, the Court of Appeals affirmed the trial court's grant of summary judgment on Hill's KCRA claims but reversed the trial court's grant of summary judgment on his Whistleblower claim. MSD moved this Court for discretionary review, which was granted. Hill's cross-motion for discretionary review was also granted. After thorough review of the record and applicable law, we affirm the Court of Appeals' decision upholding the trial court's dismissal of Hill's KCRA claims but reverse the Court of Appeals' decision on the Whistleblower claim as we believe the trial court properly granted summary judgment in favor of MSD on that claim as well.

## II.  STANDARD OF REVIEW

In determining whether the trial court erred in granting summary judgment in favor of MSD "we must consider whether the trial court correctly found that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019) (quoting CR[3] 56.03). Further, "[w]e review *de novo* the trial court's grant or denial of a motion for summary judgment." *Id.* (citing *Caniff v. CSX Transp., Inc.,* 438 S.W.3d 368, 372 (Ky. 2014) (citation omitted)).

## III.  ANALYSIS

MSD contends that the Court of Appeals erred as a matter of law in reversing the trial court's finding that MSD did not qualify as an "employer"

---

[3] Kentucky Rules of Civil Procedure.

under the Whistleblower Act. Hill argues that the Court of Appeals erred in affirming the trial court's finding that he alleged insufficient facts to survive summary judgment on his KCRA claims. We will address each argument in turn.

## A. Whistleblower Act Claim

Kentucky's "whistleblower" statute, KRS 61.102(1), prohibits retaliation by an "employer" against a public employee

> [W]ho in good faith reports, discloses, divulges . . . any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority or otherwise brings to the attention of . . . [an] appropriate body or authority, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

The Whistleblower Act defines an "employer" as "the Commonwealth of Kentucky, or *any of its political subdivisions*[.]" KRS 61.101(2) (emphasis added). Thus, "the whistleblower protections and remedies apply to employees of state government and any of its political subdivisions. The purpose underlying the statute is 'to discourage wrongdoing in government, and protect those who make [such wrongdoing] public.'" *Pennyrile Allied Cmty. Servs., Inc. v. Rogers*, 459 S.W.3d 339, 340–41 (Ky. 2015) (quoting *Workforce Dev. Cabinet v. Gaines,* 276 S.W.3d 789, 792 (Ky. 2008)).

For Hill's Whistleblower Act claim to survive summary judgment, MSD, a joint metropolitan sewer district, must qualify as an "employer" under the Act. MSD's enabling statute, KRS 76.010, provides that a joint metropolitan sewer district "shall be a public body corporate, and political subdivision." MSD

6

concedes that it is a political subdivision but argues that it is not a political subdivision *of the Commonwealth* so as to bring it within the ambit of the Whistleblower Act's definition of "employer." MSD points out that the Act does not define "employer" as *any and all political subdivisions* and KRS 76.010 does not include the phrase "of the Commonwealth."

The Court of Appeals concluded that because KRS 76.010 classified joint metropolitan sewer districts as "political subdivision[s]," the intent of the legislature was to subject those districts to the Whistleblower Act, without limitation. In so ruling, the Court of Appeals relied on *Northern Kentucky Area Planning Comm'n v. Cloyd*, in which the court, when faced with the issue of whether a planning commission was considered an "employer" under the Whistleblower Act, held that under the plain language of KRS 147.660(1), "'political subdivision' presumes a political subdivision 'of the Commonwealth'" and thus the legislative intent was to subject those commissions to the Whistleblower Act. 332 S.W.3d 91, 94 (Ky. App. 2010). Relying on *Cloyd*, the Court of Appeals declared that any "political subdivision" was presumed to be a political subdivision of the Commonwealth as a matter of law for purposes of the definition of "employer" as used in the Whistleblower Act.

Central to the Court of Appeals' analysis was its finding that MSD was not a "gray-area entity" with respect to its status as an "employer." In *Wilson v. Central City*, 372 S.W.3d 863, 866 (Ky. 2012), rendered two years after *Cloyd*, this Court was tasked with determining whether a city was a "political subdivision" of the Commonwealth for purposes of being an "employer" under

7

the Whistleblower Act.  Ultimately, the *Wilson* court held that it was not, but discussed that classification of some entities as an "employer" as that term is used in the Act is not so easy as "the line between a city, a municipality, and a municipal corporation is not always clear." *Id.*  Because KRS contains various conjunctive and disjunctive uses of the "political subdivision" nomenclature in relation to cities, municipalities, and municipal organizations, some entities fall within a "gray area" in terms of status as a "political subdivision." *Id.* at 866–67.  The Court concluded that "[w]hether an entity falling within that gray area is a 'political subdivision' under the Whistleblower Act is to be resolved in the same way that we resolve whether an entity is protected from suit by sovereign immunity" using *Comair's*[4] standards.  *Id.* at 869 n.11.

Since the text of KRS 76.010 does not make clear whether a metropolitan sewer district such as MSD is a "political subdivision of the Commonwealth" the question is to be resolved by utilizing the *Comair* sovereign immunity test. If MSD is not entitled to sovereign immunity, then it is not to be considered an "employer" under the Whistleblower Act.  Recently, this Court in *Coppage* solidified that under the *Comair* test, sewer districts are not entitled to sovereign immunity.  459 S.W.3d at 863 (reaffirming the holding in *Calvert Invs., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 805 S.W.2d 133 (Ky. 1991) that a metropolitan sewer district was not sovereignly immune). *Coppage* involved the assertion of sovereign immunity by Sanitation District

---

[4] *Comair, Inc. v. Lexington-Fayette Urban Cty. Airport Corp.*, 295 S.W.3d 91 (Ky. 2009).

8

No. 1 ("SD1"), a KRS Chapter 220 created public sewer utility that provides services in three Northern Kentucky counties.  In its opinion, the *Coppage* court confirmed the two-prong *Comair* analysis:

> First, the courts must look to the origin of the public entity, specifically: was [the entity in question] created by the state or a county [which are entitled to immunity], or a city [which is not entitled to immunity except in the legislative and judicial realms]? The second and more important inquiry is whether the entity exercises a function integral to state government.

*Id.* at 859 (internal quotations and citations omitted).

With respect to the first prong—the origins of SD1—the Court found that sanitation districts are not created by the power of the sovereign and do not operate as an arm or alter ego of the counties they serve.  *Id.* at 860. Specifically, the Court found that SD1 was not created by the three counties in which it operated and under KRS Chapter 220 (or its predecessor) "no county can impose a sanitation district upon its citizens[.]"  *Id.* at 861.  Rather, "SD1, a special district, [was] created by the free consent of the persons composing it, through a petition process and [is] managed by a board of directors that exercises all the powers and manage[s] and controls all the affairs and property of the district[.]"  *Id.* at 862.  Accordingly, the Court held that SD1 failed to satisfy *Comair's* first prong.  *Id.*

As to the second prong – the "functions" prong - two elements are to be considered: "whether the entity's function is 'governmental' as opposed to proprietary, and whether it is a matter of 'statewide' concern."  *Id.*  The *Coppage* court found that like other sanitation districts, SD1 performed a local,

9

proprietary function.  *Id.*  Specifically, the Court noted that "[s]ewage disposal and storm water management systems are not a traditional and necessary state function such as those performed by the state police, our public schools, the corrections system, and public highways and airways."  *Id.* at 864.  "Instead, the sewage disposal and storm water drainage services SD1 offers are designed to meet the needs of a discrete, localized geographic region."  *Id.*  Because "SD1 was not created by the state or county and it does not carry out a function integral to state government" the Court determined that it was not entitled to sovereign immunity.  *Id.*

Similarly, here, MSD is not entitled to sovereign immunity.  With respect to the first prong of *Comair*, MSD was originally created by the City of Louisville (not Jefferson County) and retains the same characteristics of a special district such as SD1: fiscal separation and freedom from constitutional limitations on indebtedness associated with tax collecting entities.  Furthermore, MSD's customers are "ratepayers" not taxpayers: "[c]harges for sewer service are not taxes."  *Veail v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 303 Ky. 248, 256, 197 S.W.2d 413, 418 (1946).  Most importantly, like SD1, MSD does not serve a "statewide" need but rather serves the "needs of a discrete, localized geographic region."  *Coppage*, 459 S.W.3d at 864.  Because MSD does not pass the *Comair* test, it is not entitled to sovereign immunity and therefore is not an

10

"employer" for purposes of the Whistleblower Act. *Wilson*, 317 S.W.3d at 868–69.[5]

In sum, the Court of Appeals erred by reversing the trial court's grant of summary judgment to MSD on Hill's Whistleblower claim. Unless and until the General Assembly unambiguously clarifies its intent to broaden the term "employer" to include metropolitan sewer districts within the protection afforded by the Whistleblower Act, as the judicial branch of government, we are constrained to the statute's present parameters.[6] *See Benningfield ex rel. Benningfield v. Zinsmeister*, 367 S.W.3d 561, 573 (Ky. 2012) (Schroder, J., dissenting but concurring in result) ("[I]t is the role of the General Assembly to debate and decide—through legislation—the public policy issues[]"); *Caneyville*

---

[5] Admittedly, the merger of Louisville and Jefferson County has impacted some Louisville-Jefferson County entities' immunity analysis. But even if we were to conclude that MSD is now an agency of the Metro Government, it still fails the second part of the *Comair* test.

[6] As the *Wilson* court noted, "had the legislature intended the Whistleblower Act to apply broadly to municipalities, it would have explicitly included them in their definition of 'employer.'" 372 S.W.3d at 867. *See, e.g., Lincoln Cty. Fiscal Court v. Dep't of Pub. Advocacy*, 794 S.W.2d 162, 163 (Ky. 1990) ("Where the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written[]") (citation omitted). In addition to considering the statute's plain language, the *Wilson* court looked to the most recent legislative history of the Whistleblower Act, which indicated that the General Assembly had declined to enact broad-based ethics reform which would have subjected local government entities to a state-level mandate. 372 S.W.3d at 867–68. Such proposed reform was introduced as S.B. 335 in the 1994 Regular Session of the General Assembly. By not passing that bill, the legislature declined the opportunity to create a new set of laws which would have applied the substantive portions of the Whistleblower Act to municipalities. Instead, the legislature in that same session passed a law which would become KRS 65.003, requiring cities to enact their own ethics code. *See, e.g.*, KRS 65A.070. As this Court in *Wilson* noted, "[t]his strongly suggests that the General Assembly's intent was to exclude cities from the Whistleblower Act's prohibitions." 372 S.W.3d at 868.

11

*Vol. Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 807 (Ky. 2009) ("Shaping public policy is the exclusive domain of the General Assembly[]"); *Wilson v. Ky. Transp. Cabinet*, 884 S.W.2d 641, 646 (Ky. 1994) ("The public policy of the Commonwealth is determined by the General Assembly and not by the courts[]").

## B.  KCRA Claims

Under the KCRA, it is unlawful for an employer to "discharge any individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race."  KRS 344.040(1)(a).  As the KCRA was enacted in 1966 to implement the Federal Civil Rights Act of 1964 ("FCRA"), its provisions are virtually identical to the FCRA and thus Kentucky courts consider the way the FCRA has been interpreted when analyzing KCRA claims.  *Jefferson Cty. v. Zaring*, 91 S.W.3d 583, 586 (Ky. 2002) (citations omitted).

Hill's KCRA claims alleged racial discrimination and retaliation.  As an initial matter, we must address the standard to employ in analyzing Hill's race discrimination claim.  MSD argues that Kentucky law does not recognize a "mixed motive" theory, but nevertheless agrees with the trial court's ultimate decision to dismiss Hill's discrimination claim.

While Kentucky law does not expressly recognize a "mixed motive" theory, federal law does:

> [A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a **motivating factor** for any employment practice, even though other factors also motivated the practice.

42 U.S.C.[7] § 2000e-2(m) (emphasis added).

Thus, under federal law, a "mixed motive" case is one in which the plaintiff alleges that "both legitimate and illegitimate reasons motivated the decision[.]" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711 (6th Cir. 2006) (citation omitted). Once the plaintiff makes a showing that an "unlawful employment practice . . . was a motivating factor," 42 U.S.C. § 2000e-2(m), "the burden of proof shifts to the defendant to avoid liability by showing that the same employment decision would have been made 'in the absence of the impermissible motivating factor.'" *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993) (quoting 42 U.S.C. § 2000e-5(g)(2)(B)).

Kentucky courts have allowed a version of "mixed motive" causes of action where the party alleging discrimination makes an initial showing that the discriminatory motive was "a contributing and essential factor" of the employer's adverse decision. *See, e.g., Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 823 (Ky. 1992); *Walker v. Commonwealth*, 503 S.W.3d 165, 173 (Ky. App. 2016); *Mendez v. Univ. of Kentucky Bd. of Trs.*, 357 S.W.3d 534, 541 (Ky. App. 2011). Using that standard, the trial court found that Hill failed to make the requisite showing for his discrimination claim to survive MSD's motion for summary judgment. While Hill made vague assertions of a history of racial discrimination at MSD, he did not offer proof that he reported any discrimination, made formal or informal complaints, or even alleged more

---

[7] United States Code.

13

specifically any discrimination he experienced. Further, his claim that white MSD employees who committed minor violations, and violations more major than his, were not terminated is wholly unsupported by the record. In its order dismissing Hill's KCRA claims, the trial court noted that Hill had roughly four years since filing his lawsuit to engage in discovery and gather evidence to support his claims. He not only failed to provide any proof of his claims, but the court twice entered Notices to Dismiss for Lack of Prosecution.

The trial court found that the only affirmative evidence in the record supported MSD's position that it terminated Hill based on the violations revealed by the audit. The audit report set forth numerous violations committed by Hill including unauthorized purchases, favoritism in the hiring of private vendors, use of MSD equipment for private purposes, and improperly paid invoices. MSD's independent investigation into Hill's violations confirmed the findings of the audit. Based on its own investigation and the findings revealed by the audit, MSD sufficiently demonstrated that it had legitimate, nondiscriminatory reasons for terminating Hill's employment, without consideration of his race. Therefore, the trial court properly concluded that Hill's "mixed motive" claim failed as a matter of law.

Regarding Hill's retaliation claim, he argues that several individuals at MSD, and MSD as a whole, conspired to terminate his employment for his having reported racial discrimination to MSD. The KCRA makes it unlawful for a person, or two or more people, to conspire:

> (1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by [KRS

14

Chapter 344], or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [KRS Chapter 344.]

KRS 344.280.

A *prima facie* retaliation case under KRS 344.280 requires the plaintiff to have engaged in a "protected activity" and to show a causal nexus between the activity and the employer's adverse employment action. *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 583 (Ky. 2016). Here, the record reflects that Hill failed to meet this burden of production: he never made a complaint concerning race discrimination or harassment to anyone at MSD, he did not complain to the auditors of any specific racial discrimination at MSD, and he offered no evidence that MSD was aware that he allegedly reported racial discrimination to the auditors. Because Hill was unable to show that he engaged in a protected activity and was unable to make a *prima facie* case of retaliation, the trial court properly granted summary judgment to MSD on this claim.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals as to the dismissal of Hill's KCRA claims but reverse the Court of Appeals' determination that MSD is subject to the Whistleblower Act. On remand, the trial court is directed to enter final judgment in favor of MSD on all of Hill's claims.

Minton, C.J.; Hughes, Keller, Nickell, VanMeter and Wright, JJ., sitting. Minton, C.J.; Hughes, Keller, Nickell and Wright, JJ., concur. Lambert, J., not sitting.

15

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Edward L. Lasley
Bradley Robert Palmer
Conliffe, Sandmann & Sullivan, PLLC


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Garry Richard Adams, Jr.
Andrew Thomas Lay
Abigail Victoria Lewis
Adams Landenwich Walton, PLLC